# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| MARIA E. RODRIGUEZ DE LEON, on behalf of herself and all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, in his official capacity, <br><br> *Defendant.* | Civil Case No.: 1:21-cv-21178 <br> Class Action |

## CLASS ACTION COMPLAINT

Plaintiff Maria Elena Rodriguez de Leon, on behalf of herself and others similarly situated, alleges as follows:

## INTRODUCTION

1. Ms. Rodriguez de Leon brings this class action to challenge the unlawful process by which the Social Security Administration (SSA) terminated the monthly disability benefits that she and other similarly situated individuals previously received under the Social Security Act, 42 U.S.C. §401 *et seq*. (Act).

2. SSA administers two primary forms of financial assistance for individuals who are unable to engage in substantial gainful employment because of physical or mental disabilities. Title XVI benefits, known as Supplemental Security Income (SSI), are need based and funded by general tax revenues. *See* 42 U.S.C. §§1381(a), 1382(a). SSI benefits aid disabled individuals whose income and resources fall below specified levels. *See id.* §1382(a). Benefits provided under Title II of the Act—including the most common benefit, Social Security Disability Insurance (SSDI)—are a form of insurance. Individuals who are employed pay

premiums for the insurance through their payroll taxes. *See id.* §401(b). If a disability renders such an individual unable to work (i.e., unable to maintain substantial gainful employment within the meaning of the Act) during the qualifying period of her insurance, she is entitled to SSDI benefits. *See id.* §423. Benefits are calculated based on an individual's salary or similar income prior to becoming disabled. *See id.* §415(a).

3. In 2013, after developing disabilities that rendered her unable to work, Ms. Rodriguez de Leon applied for SSI benefits. SSA found her disabled and entitled to such benefits.

4. Starting around 2016, SSA invoked 42 U.S.C. §405(u) and §1383(e)(7)(A) to reconsider Ms. Rodriguez de Leon's and other class members' favorable disability determinations. Those provisions instruct SSA to "immediately redetermine" an individual's entitlement to benefits if there is "reason to believe" that fraud or similar fault was involved in the individual's application for benefits. *Id.* §§405(u)(1)(A), 1383(e)(7)(A)(i). In conducting such redeterminations, SSA must disregard or exclude evidence that it has reason to believe was fraudulent. *Id.* §§405(u)(1)(B), 1383(e)(7)(A)(ii).

5. The impetus for SSA's redeterminations was the discovery of fraud perpetrated by Fernando Mendez-Villamil, a psychiatrist practicing in Miami. Specifically, SSA initiated redetermination proceedings after the government indicted Dr. Mendez-Villamil and several of his employees for submitting fraudulent medical evidence to SSA. Dr. Mendez-Villamil ultimately pleaded guilty to fraud charges, and in the factual proffer supporting his plea, he admitted that he sometimes provided false diagnoses to support applications for disability benefits.

6. Following Dr. Mendez-Villamil's indictment, SSA's Office of the Inspector General (OIG) concluded, based on the indictment and a review of 60 disability cases involving Dr. Mendez-Villamil, that it had "reason to believe that fraud was involved in the application[s] of individuals seen by Dr. Mendez-Villamil." Memorandum from Joseph Gangloff, Chief Counsel to the Inspector General, SSA, to Andy Liu, General Counsel, SSA 1 (April 11, 2016). OIG provided a list of 3,500 patients of Dr. Mendez-Villamil who had applied for Title II and/or Title XVI benefits.

7. SSA then initiated redetermination proceedings for disability beneficiaries (including Ms. Rodriguez de Leon) whose applications for benefits had included evidence from Dr. Mendez-Villamil.

8. As a result of these redetermination proceedings, Ms. Rodriguez de Leon lost her disability benefits. On information and belief, hundreds of other beneficiaries have lost their benefits for the same reason.

9. SSA's redetermination processes are unlawful—as all three courts of appeals that have addressed the issue have held. *See Hicks v. Commissioner of Social Security*, 909 F.3d 786 (6th Cir. 2018); *Jaxson v. Commissioner of Social Security*, 963 F.3d 645, 648 (7th Cir. 2020); *Kirk v. Commissioner of Social Security*, 987 F.3d 314 (4th Cir. 2021).

10. During the redetermination process at issue here, which is materially identical to the process deemed unlawful in *Hicks*, *Jaxson*, and *Kirk*, SSA has automatically excluded all medical evidence associated with Dr. Mendez-Villamil without permitting the affected beneficiaries any opportunity to dispute SSA's allegations that the evidence submitted in their cases is fraudulent. In other words, in each affected beneficiary's case, SSA's allegation that

evidence is fraudulent is treated as conclusive and not subject to rebuttal. That conduct violates the Due Process Clause, the Administrative Procedure Act (APA), and the Social Security Act.

11. Ms. Rodriguez de Leon, on behalf of herself and others similarly situated, seeks declaratory and injunctive relief (1) reinstating her and other class members' disability benefits and (2) ordering that, if SSA wishes to redetermine class members' disability claims, it must do so in accordance with the requirements of the Due Process Clause, the APA, and the Social Security Act.

## PARTIES

12. Plaintiff Maria Elena Rodriguez de Leon is a citizen of the United States and a resident of Miami, Florida.

13. Defendant is the Commissioner of the Social Security Administration. He is sued in his official capacity.

## JURISDICTION

14. This Court has subject-matter jurisdiction under 42 U.S.C. §§405(g), 1383(c)(3), and 28 U.S.C. §§1331, 1361.

## STATEMENT

I. **PLAINTIFF**

15. Plaintiff Maria Elena Rodriguez de Leon is 58 years old and a resident of Miami, Florida.

16. For over a decade, Ms. Rodriguez de Leon has been unable to maintain substantial gainful employment due to mental illness. For instance, she has been unable to continue her prior employment as a security guard.

17. Ms. Rodriguez de Leon applied for SSI benefits in October 2013. In December 2013, SSA found her disabled as of October 2013.

18. Ms. Rodriguez de Leon then began receiving several hundred dollars each month in SSI benefits.

19. She relied on her monthly SSI benefits to help cover her basic needs.

## II. FERNANDO MENDEZ-VILLAMIL'S FRAUD

20. Dr. Fernando Mendez-Villamil was previously a licensed psychiatrist practicing in Miami.

21. On December 16, 2009, a letter from U.S. Senator Charles Grassley identified Dr. Mendez-Villamil as having written the largest number of prescriptions for mental health drugs paid for by Medicaid in the state of Florida.

22. Following Senator Grassley's letter, SSA (including its OIG), and other federal and state agencies investigated Dr. Mendez-Villamil and several of his employees.

23. In 2016, the government indicted Dr. Mendez-Villamil for engaging in various schemes to defraud SSA, Medicare, Medicaid, and U.S. Citizenship and Immigration Services (USCIS) by submitting false claims for unnecessary medication, falsifying debilitating diagnoses, and making false representations on forms submitted to the USCIS.

24. Several months later, Dr. Mendez-Villamil pleaded guilty to various counts of conspiracy to make false statements and to commit health care and wire fraud.

25. Nothing in Dr. Mendez-Villamil's plea agreement indicates that *all* of his patients' applications for disability benefits involved fraud or similar fault. In fact, the factual proffer supporting the agreement expressly stated that the government did not believe that every patient record Dr. Mendez-Villamil produced (or that the treatment of every patient he saw) involved fraud.

### III. SSA'S REDETERMINATION PROCESS

26. On information and belief, the indictment of Dr. Mendez-Villamil led SSA to initiate "redetermination" proceedings under 42 U.S.C. §405(u) and §1383(e)(7)(A) for thousands of beneficiaries whose applications for disability benefits contained evidence from him.

27. These proceedings resulted in SSA terminating benefits for Ms. Rodriguez de Leon and, on information and belief, hundreds if not thousands of other individuals.

28. On information and belief, SSA treated the guilty plea of Dr. Mendez-Villamil as conclusive and irrebuttable evidence that *all* medical evidence submitted, prepared, or signed by him after January 2002 involved fraud or similar fault, even though the plea and supporting factual proffer did not establish that proposition.

29. In its redetermination proceedings, therefore, SSA deemed all such medical evidence to be fraudulent—and thus excluded that evidence from consideration during the redetermination process—without giving affected beneficiaries any opportunity to dispute the government's fraud allegations and the resulting exclusion of medical evidence. On information and belief, SSA also excluded evidence produced by doctors who were not suspected of fraud or malfeasance, but who may have relied on evidence from Dr. Mendez-Villamil.

30. SSA's unchallengeable exclusion of medical evidence compounded the onerous restrictions SSA placed on beneficiaries' ability to submit additional medical evidence during the redetermination proceedings. Pursuant to Social Security Ruling 16-1p, beneficiaries could submit new evidence only if it "relate[d] to the individual's entitlement and eligibility *from the time of the individual's original allowance*." 81 Fed. Reg. 13,436 (Mar. 14, 2016) (emphasis added). In other words, new evidence had to relate to whether the beneficiaries were disabled at the time of their original awards—often many years earlier. And as the Sixth Circuit recognized

in *Hicks*, "it is understandably difficult to obtain new evidence of past disability." 909 F.3d at 802. Among other things, beneficiaries may not have retained copies of their medical records from many years earlier, other treating or consulting doctors may no longer be available or may have destroyed relevant records based on routine document-destruction policies, and new doctors may be unwilling to opine on whether a disability was present many years earlier.

31. SSA's unchallengeable exclusion of medical evidence that was submitted by Dr. Mendez-Villamil or based on evidence prepared by him seriously impeded Ms. Rodriguez de Leon and others from establishing their entitlement to disability benefits in the redetermination process, causing them serious harm.

### IV. SSA'S REDETRMINATION OF MS. RODRIGUEZ DE LEON'S DISABILITY CLAIM

32. In mid-2017, SSA notified Ms. Rodriguez de Leon that it was required to redetermine her entitlement to disability benefits, and to do so without considering any evidence that Dr. Mendez-Villamil submitted to the agency after January 2002. The agency further notified her that without considering evidence from Dr. Mendez-Villamil, there was insufficient evidence to support her earlier favorable disability determination. The agency informed her that she could request reconsideration of its redetermination decision but that she could not challenge OIG's allegation of fraud.

33. Ms. Rodriguez de Leon requested that the agency reconsider its adverse redetermination decision.

34. Around February 5, 2018, SSA notified Ms. Rodriguez de Leon that it had reconsidered her case and again concluded there was insufficient evidence to support its initial favorable disability determination. In the notice, SSA again stated that it was required to disregard evidence that Dr. Mendez-Villamil submitted to the agency after January 2002.

35. Ms. Rodriguez de Leon subsequently requested a hearing before an administrative law judge (ALJ), and she appeared for a hearing on April 3, 2020.

36. On April 17, 2020, the ALJ issued an adverse redetermination decision. At the outset of her decision, the ALJ stated that, at the hearing, Ms. Rodriguez de Leon objected to SSA's finding of fraud or similar fault. The ALJ, however, overruled the objection, stating (1) that she was required to disregard evidence if there is reason to believe that fraud or similar fault was involved in the submission of the evidence, and (2) that the OIG fraud referral discussed above provided "reason to believe" that fraud or similar fault was involved in the submission of evidence from Dr. Mendez-Villamil. The ALJ explained that she could not consider any evidence that he had supplied, prepared, or signed after January 2002, and that she was therefore disregarding evidence that he submitted in support of Ms. Rodriguez de Leon's application for benefits that was dated from July 2011 to October 2013.

37. On October 21, 2020, SSA's Appeals Council denied Ms. Rodriguez de Leon's request for review and adopted the ALJ's decision as the commissioner's final decision.[*]

38. As a result of SSA's termination of her benefits, Ms. Rodriguez de Leon is no longer eligible for Medicaid in Florida, and she has at times had to forgo medical treatment. She has also had to depend more heavily on family members to pay for basic necessities, including her heart medications.

39. The termination of Ms. Rodriguez de Leon's benefits has additionally caused her considerable stress and anxiety.

---

[*] On February 21, 2021, the Appeals Council issued a letter extending the time for Ms. Rodriguez de Leon to file a civil action through at least March 28, 2021.

## CLASS ACTION ALLEGATIONS

40. Ms. Rodriguez de Leon brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), on behalf of herself and the following class:

> All persons who were receiving Title II and/or Title XVI benefits (i) whose disability status SSA has sought to redetermine because their applications included evidence submitted, prepared, or signed by Dr. Mendez-Villamil; (ii) for whom SSA has excluded evidence submitted, prepared, or signed by Dr. Mendez-Villamil as potentially fraudulent, without providing the claimants an opportunity to rebut the fraud allegations; (iii) who have received a redetermination decision from SSA that is less than fully favorable; and (iv) who were not indicted for participating in the fraud and improperly receiving benefits.

41. **Numerosity**: On information and belief, the proposed class is so numerous that joinder of all members is impractical. *See* Fed. R. Civ. P. 23(a)(1). SSA OIG's referral identified 3,500 individuals who had been patients of Dr. Mendez-Villamil. On information and belief, a substantial proportion of those individuals had already been found entitled to disability benefits and were subjected to redetermination proceedings under 42 U.S.C. §405(u) and §1383(e)(7)(A). The precise number of members in the class can be readily identified through access to records maintained by defendant.

42. **Commonality**: There are questions of law and fact common to all members of the class, *see* Fed. R. Civ. P. 23(a)(2), including:

   a. Whether SSA's redetermination process for the class violates the Due Process Clause;

   b. Whether SSA's redetermination process for the class violates the formal-adjudication requirements of the Administrative Procedure Act;

   c. Whether SSA's redetermination process for the class is arbitrary and capricious in violation of the Administrative Procedure Act; and

       d. Whether SSA's redetermination process for the class violates the Social Security Act's "hearing" requirement.

43. **Typicality**: Ms. Rodriguez de Leon's claims are typical of the claims of members of the class, *see* Fed. R. Civ. P. 23(a)(3), because she, like other class members, was afforded no opportunity to dispute the fraud allegation that led to the exclusion of material medical evidence during SSA's redetermination process.

44. **Adequate Representation**: Ms. Rodriguez de Leon will fairly and adequately represent and protect the interests of the class, and she has retained counsel experienced in complex litigation and class actions. *See* Fed. R. Civ. P. 23(a)(4). Ms. Rodriguez de Leon and her counsel are committed to prosecuting this action and have the financial resources to do so.

45. **Superior Method of Adjudication**: Defendant has acted on grounds that apply generally to the class. Specifically, SSA has redetermined benefits unfavorably for the entire class using the same redetermination process challenged here as unlawful. Accordingly, final declaratory and injunctive relief would be appropriate for the class as a whole. *See* Fed. R. Civ. P. 23(b)(2).

46. The questions of fact and law common to members of the class predominate over any questions affecting only individual members. Adjudication of this action as a class action is therefore superior to other available methods for fairly and efficiently adjudicating Ms. Rodriguez de Leon's and other class members' claims. *See* Fed. R. Civ. P. 23(b)(3).

## COUNT ONE

### SSA'S REDETERMINATION PROCESS DEPRIVES BENEFICIARIES OF DUE PROCESS OF LAW
(**Fifth Amendment to the U.S. Constitution**)

47. Ms. Rodriguez de Leon incorporates the preceding paragraphs by reference.

48. Ms. Rodriguez de Leon and every other member of the proposed class each have a statutory entitlement to Title II and/or Title XVI benefits that is protected by the Fifth Amendment. Ms. Rodriguez de Leon and every other member of the proposed class each relied on these disability benefits for his or her basic livelihood. The private interest in having benefits continue is compelling.

49. Defendant has violated class members' due process rights by failing to accord them a meaningful opportunity to be heard in the redetermination process. Beneficiaries could not confront and rebut the purported fraud that underlay the exclusion of material medical evidence.

## COUNT TWO

### SSA'S REDETERMINATION HEARINGS DO NOT COMPLY WITH THE APA'S REQUIREMENTS FOR FORMAL ADJUDICATIONS
(**Administrative Procedure Act, 5 U.S.C. §706**)

50. Ms. Rodriguez de Leon incorporates the preceding paragraphs by reference.

51. The redetermination proceedings are formal adjudications for purposes of the APA.

52. The APA provides that in formal adjudications:

   a. "A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts," 5 U.S.C. §556(d), and

b. An ALJ "may not be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency.  An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 557 of this title, except as witness or counsel in public proceedings," 5 U.S.C. §554(d).

53. SSA's redetermination hearings for members of the proposed class violated the APA's formal-adjudication requirements.

54. For instance, defendant did not permit members of the proposed class to rebut SSA's fraud allegations or cross-examine SSA with respect to those allegations.

55. Defendant also required ALJs to accept OIG's factual determinations of fraud, even though OIG is engaged in SSA's investigative or prosecuting functions.

## COUNT THREE

**SSA'S REDETERMINATION PROCESS IS ARBITRARY AND CAPRICIOUS**
**(Administrative Procedure Act, 5 U.S.C. §706)**

56. Ms. Rodriguez de Leon incorporates the preceding paragraphs by reference.

57. The APA permits a reviewing court to "hold unlawful and set aside agency action" that is "arbitrary" and "capricious."  5 U.S.C. §706(2).

58. Defendant acted arbitrarily and capriciously in redetermining class members' disability claims.  For example, SSA has created a bifurcated scheme in which SSA-generated allegations of fraud proceed through a process with greater procedural protections than OIG-generated allegations.  This distinction has no statutory basis and is arbitrary and capricious.

## COUNT FOUR

### SSA'S REDETERMINATION PROCESS DOES NOT COMPLY WITH THE SOCIAL SECURITY ACT'S HEARING REQUIREMENT
### (Social Security Act, 42 U.S.C. §405(b)(1))

59. Ms. Rodriguez de Leon incorporates the preceding paragraphs by reference.

60. The Social Security Act requires an "opportunity for hearing." 42 U.S.C. §§405(b)(1), 1383(c)(1)(A).

61. SSA's redetermination hearings violated the Act's hearing requirement. A "hearing" contemplates "a procedure at which both sides can give their views on potentially dispositive matters." *Jaxson*, 963 F.3d at 648.

62. In the redetermination proceedings, defendant did not permit members of the proposed class to give their views on potentially dispositive matters, including whether fraud affected their individual cases.

## COUNT FIVE (NON-CLASS RELIEF)

### SSA'S DECISION AS TO MARIA ELENA RODRIGUEZ DE LEON WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE
### (Social Security Act, 42 U.S.C. §405(g))

63. Ms. Rodriguez de Leon incorporates the preceding paragraphs by reference.

64. Defendant's redetermination decision for Ms. Rodriguez de Leon was not supported by substantial evidence.

65. Defendant's redetermination decision for Ms. Rodriguez de Leon failed to apply the correct legal standards for determining disability.

**PRAYER FOR RELIEF**

**WHEREFORE**, Ms. Rodriguez de Leon prays for the following relief:

a. Certification of the case as a class action on behalf of the proposed class;

b. Appointment of Maria Elena Rodriguez de Leon as named representative of the class;

c. Appointment of undersigned counsel as class counsel;

d. A declaration that defendant's redetermination proceedings involving the members of the proposed class were unlawful;

e. Injunctive relief reinstating all class members' benefits;

f. Injunctive relief requiring defendant to conduct any redetermination proceedings involving any member of the class in accordance with the U.S. Constitution, the APA, and the Social Security Act;

g. Payment of past due benefits (including interest) for any period during which any member of the proposed class was wrongly deprived of Title II and/or Title XVI benefits to which he or she was entitled;

h. An award of costs, including reasonable attorneys' fees to the extent permitted by law; and

i. Any other legal and equitable relief that this Court deems necessary, just, and proper.

Dated:  March 26, 2021

Respectfully submitted,

*/s/ Heather Freeman*
Heather Freeman
IL Bar No. 6282430
FL Bar No. 40561
LAW OFFICE OF HEATHER FREEMAN, PLLC
P.O. Box 13962
Tallahassee, FL 32317
Tel.: (850) 391-5336
Fax: (800) 882-4212
hf@hfreemanlaw.com

Daniel S. Volchok (*pro hac vice motion forthcoming*)
Emma P. Simson (*pro hac vice motion forthcoming*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Daniel.Volchok@wilmerhale.com
Emma.Simson@wilmerhale.com

Noah Levine (*pro hac vice motion forthcoming*)
Jeanine Alvarez (*pro hac vice motion forthcoming*)
Nelson S. Castaño (*pro hac vice motion forthcoming*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
Noah.Levine@wilmerhale.com
Jeanine.Alvarez@wilmerhale.com
Nelson.Castano@wilmerhale.com